[815 NYS2d 95]

In the Matter of MORTON S. ROBSON, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, May 30, 2006

164

**APPEARANCES OF COUNSEL**

*Thomas J. Cahill, Chief Counsel, Departmental Disciplinary Committee,* New York City (*Andral N. Bratton* of counsel), for petitioner.

*Benjamin, Brotman & Associates, P.C.* (*Michael A. Gentile* of counsel), for respondent.

**OPINION OF THE COURT**

Per Curiam.

Respondent was admitted to the practice of law in the State of New York by the First Judicial Department on March 20, 1950 and at all times relevant to this proceeding has maintained an office for such practice within this Department.

On or about January 9, 2004, respondent was served with a notice and statement of charges alleging violations of four Disciplinary Rules arising out of his misconduct in connection with $6.2 million entrusted to his escrow account. Specifically, respondent was charged with violating Code of Professional Responsibility DR 1-102 (a) (4) (22 NYCRR 1200.3 [conduct involving fraud, dishonesty, deceit or misrepresentation]), DR 9-102 (a) (22 NYCRR 1200.46 [misappropriation of funds]) and (c) (3) (failure to render accounting) and DR 1-102 (a) (7) (conduct adversely reflecting on fitness as a lawyer).

The misconduct can be summarized as follows: Respondent made misrepresentations to the principal of Regency Foundation, an investor in his client Cresbury Screen Entertainments Ltd., in connection with Regency's purchase of 20% of the shares of Cresbury, to induce the principal to transfer $6.2 million into respondent's firm's escrow account for the purpose of satisfying a lien by Columbia Pictures against a film library which Cresbury had contracted to purchase and wished to, but could not, market until the lien issue had been resolved.[1] The agreement between Regency and Cresbury, prepared with respondent's assistance, provided that after the $6.2 million was transferred into respondent's firm's escrow account, it "shall not be released unless and until [respondent's firm] has received from Columbia Pictures a release of any and all liens upon and claims to the [film] [l]ibraries and an assignment of any and all of Columbia's right to the [l]ibraries, the copyrights on the films

---

1. $5 million was to satisfy Columbia's lien and $1.2 million was for working capital.

and its liens on the films and the copyrights."[2] Three days after the $6.2 million was transferred to respondent's escrow account (the two intervening days were a Saturday and Sunday), respondent, under the direction of Guido Bensberg, Cresbury's principal shareholder, transferred the entire amount to the account of Kenneth Sherk, a notary public in Vancouver, British Columbia, with instructions to pay $1.15 million to a Mr. Krieg, whom respondent did not know, on behalf of Bensberg. Respondent failed to apprise Regency of this action for more than six weeks, has never accounted to Regency for the disposition of the $6.2 million,[3] and never used any portion of the money to extinguish the Columbia lien against Cresbury, upon which Columbia ultimately foreclosed.

After a hearing, the referee sustained counts one and four. He found insufficient evidence to sustain count two, alleging misappropriation of funds entrusted to respondent by Regency and another without their knowledge or consent. Nor did the referee find respondent liable under count three, alleging failure to render an accounting to Regency and others, concluding that since respondent transferred the funds to the notary immediately after receiving them, he would have no "basis for being able to render an accounting as to [their] disbursement or distribution." Balancing the huge financial loss suffered by Regency against respondent's previously unblemished record throughout 55 years of law practice and the drastic financial consequences of a substantial period of suspension, the referee recommended a two-month suspension.

The Hearing Panel agreed with the referee's determination sustaining counts one and four and, in addition, concluded that the evidence supported a finding of liability on the misappropriation charge (count two). In rejecting respondent's argument that liability under this count cannot be sustained because the escrow funds were the property of his client, Cresbury, and that by following Bensberg's direction to transfer the funds to Can-

---

**2.** In a letter sworn to before a notary one day before the funds were transferred to respondent's account, respondent advised Columbia's counsel that there was "presently" $4.5 million in his trust account and that he would transfer the funds to Columbia to resolve all claims regarding the film libraries upon Columbia's execution of various documents transferring its interest in the film library and its lien.

**3.** According to respondent's testimony, except for $780,000, which respondent asked Sherk to return to him and which was used to satisfy the bond in a Florida appeal from a judgment in Columbia's favor against Cresbury, respondent had no knowledge of what happened to the $6.2 million.

ada, respondent was, in effect, following the direction of Cresbury, which was never deprived of the funds, the Panel noted that there is nothing in the record to support the claim that Bensberg had the authority to order the funds transferred and the escrow provisions violated and that the record, rather, supports a conclusion that Bensberg did not have such authority.[4] In addition, the Panel noted that the funds were not transferred to an account controlled by Cresbury; it had disclaimed any ownership interest in the Canadian account. The Panel ultimately rested its finding of misrepresentation on the conclusion that the funds were deposited into the escrow account for specific purposes, that the respondent was a fiduciary for those funds and that Regency, which by the terms of the escrow agreement had acquired a 20% interest in Cresbury, had a legal interest in such funds until those purposes were fulfilled.

The Panel recommended a two-year suspension rather than the referee's recommended two-month suspension, concluding that while the factors the referee had relied on—respondent's 55 years of law practice and the financial hardship that would result from a suspension—might evoke sympathy, such factors do not merit consideration in determining an appropriate sanction.

The Committee moves to confirm the Hearing Panel's report and recommendation and for the imposition of an appropriate sanction, and respondent cross-moves to disaffirm the report and dismiss all charges.

We agree with the Committee that the Hearing Panel's findings of fact and conclusions of law should be confirmed. As to count one, in representing to Regency there was an agreement with Columbia to settle the lien matter and that the only open item was the actual payment to Columbia when in fact no settlement agreement with Columbia had been reached, respondent induced Regency to put up the money to satisfy Columbia's demands. Moreover, despite respondent's representation that the $6.2 million would remain in the escrow account until he obtained a release from Columbia of all liens on the film library, respondent released the funds for other than their intended purpose without informing Regency. Thus, the finding of liability on count one was properly sustained.

We also agree with the Hearing Panel's determination sustaining liability under the misappropriation count, count two. While

---

4. Cresbury had a managing director who issued instructions to respondent.

respondent maintains that the $6.2 million transferred into respondent's escrow account belonged to Cresbury and that he transferred the funds to Sherk at Bensberg's direction, there is nothing to show that Cresbury could use the funds in violation of the escrow agreement or that Bensberg had the authority to direct the transfer of such funds. Since Regency, by the terms of the escrow agreement, had become a 20% shareholder in Cresbury, it had a legal interest in the funds, which respondent, as a fiduciary, misappropriated by transferring them to an account not controlled by Cresbury.

The misconduct on which counts one and two was predicated and the findings of liability on those counts clearly supports a conclusion that count four (conduct that adversely reflects on fitness as a lawyer) was also properly sustained.

This is not the first instance of misconduct on respondent's part. In 1987, the United States Bankruptcy Court for the Northern District of Ohio held that respondent had filed false and deceptive affidavits and had lied under oath when he testified (*In re D.H. Overmyer Telecasting Co., Inc.,* 77 BR 128, 160, 167 [1987] ["Mr. Robson's testimony was fraught with contradictions, inconsistencies, evasions, convenient memory lapses, efforts to blame others and lies. At one point he even claimed not to recall the entire year of 1976"]). In that proceeding, the court held respondent and his firm liable for $897,782 in treble damages based on a violation of New York Judiciary Law § 487 (1), which provides that such damages may be recovered in a civil action from an attorney who is "guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party." Subsequently, in 1993, respondent received a formal admonition by the Committee for violations of DR 7-106 (a) (22 NYCRR 1200.37 [advising a client to disregard a ruling of a tribunal made in the course of a proceeding]) and DR 1-102 (a) (7) (engaging in conduct that adversely reflects on fitness as a lawyer).

Having failed to acknowledge any wrongdoing throughout this proceeding, respondent asserts in support of his submission to this Court that the evidence fails to establish that he made any false representations or that he misappropriated funds. It is difficult to reconcile respondent's denial of wrongdoing with Regency's loss of $6.2 million and the virtual destruction of the value of its interest in Cresbury. This grave misconduct and egregious breach of trust should be met with the most severe sanction, that of disbarment.

Accordingly, the Disciplinary Committee's petition should be granted to the extent of confirming the Hearing Panel's determination of liability, and respondent disbarred and his name stricken from the roll of attorneys and counselors-at-law. Respondent's cross-motion should be denied.

MARLOW, J.P., SULLIVAN, NARDELLI, WILLIAMS and SWEENY, JJ., concur.

Respondent disbarred, and his name stricken from the roll of attorneys and counselors-at-law in the State of New York, effective the date hereof.